UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GERJUAN TYUS,
     Plaintiff

VS.

CITY OF NEW LONDON

CHIEF MARGORET ACKLEY,
NEW LONDON POLICE DEPT.

LIEUTENANT TODD BERGESON,
NEW LONDON POLICE DEPT.

LIEUTENANT BRIAN WRIGHT,
NEW LONDON POLICE DEPT.

SERGEANT CHRISTINA,
NEW LONDON POLICE DEPT.

SERGEANT KEVEN MCBRIDE,
NEW LONDON POLICE DEPT.

OFFICER ROGER NEWTON,
NEW LONDON POLICE DEPT.

OFFICE TODD LYNCH,
NEW LONDON POLICE DEPT.

OFFICER ZELINSKI,
NEW LONDON POLICE DEPT.

OFFICER TIMOTHY HENDERSON,
NEW LONDON POLICE DEPT.

OFFICER LIACHENKO,
NEW LONDON POLICE DEPT.

OFFICER PELCHAT,
NEW LONDON POLICE DEPT.

OFFICER MARCACCIO,
NEW LONDON POLICE DEPT.

OFFICER MELISSA SCHAFRANSKI,
NEW LONDON POLICE DEPT.

OFFICER DARRIN OMARA,
NEW LONDON POLICE DEPT.

CIVIL NO. 3:13-cv-01486 (SUR)

1

```
OFFICER LAMONTAGNE,                    :
NEW LONDON POLICE DEPT.                 :
                                        :
SPECIAL AGENT SCOTT E. RIORDAN,         :
BUREAU OF ALCOHOL, TOBACCO,             :
FIREARMS AND EXPLOSIVE                  :
                                        :
SPECIAL AGENT WHEELER,                  :
BUREAU OF ALCOHOL, TOBACCO,             :
AND EXPLOSIVE                           :
                                        :
SPECIAL AGENT ROBERT HARRISON,          :
BUREAU OF ALCOHOL, TOBACCO,             :
FIREARMS AND EXPLOSIVE                  :
                                        :
SPECIAL AGENT DENNIS C. TURMAN,         :
BUREAU OF ALCOHOL, TOBACCO,             :
FIREARMS AND EXPLOSIVE                  :
                                        :
SPECIAL AGENT GUY N. THOMAS,            :
BUREAU OF ALCOHOL, TOBACCO,             :
FIREARMS AND EXPLOSIVE                  :
                                        :
-----------------------------------
```

## AMENDED COMPLAINT

1. This complaint is commenced under 42 U.S.C. §1983, for deprivation of constitutional rights and laws under the **Fourth, Fifth, Sixth,**and **Fourteenth Amendment** to the **United States Constitution**, as well as state tort claims of false arrest, assault and battery, negligence, and intentional infliction of emotional distress, and punishment without clear warrant of law under **Article First §9** of the **Connecticut Constitution.** The plaintiff sought monetary damages, declaratory judgement pursuant to **28 U.S.C. §2201,** injunctive relief pursuant to **Rule 65, Fed. R. Civ. P.,** jury demand pursuant to **Rule 38(d), Fed. R. Civ. P.,** and attorney fees pursuant to **42 U.S.C. §1988.**

## I. JURISDICTION

2. Jurisdiction of the Court, is invoked pursuant to **28 U.S.C. §§1331** and **1343**, over the plaintiff's claims of violation of federal constituion rights, and supplemental jurisdiction over the plaintiff's state law tort claims pursuant to **28 U.S.C. §1367**, in the cause of action against the defendants, is brought to redress deprivation under color of state law under **42 U.S.C. §1983**, in the venue of the United States District Court for the District of Connecticut, pursuant to **28 U.S.C. §1391**.

## II. PARTIES

3. Plaintiff **GerJuan Tyus**, is a citizen of the United States and a resident of the Defendant-City of New London, a municipal corporation within the State of Connecticut.

4. Defendant **City of New London**, a municipal corporation, as such in the meaning of **C.G.S. §§7-148, 7-159**, and **7-294**, shall be responsible for establishing rules or regulations of general application, provide for police protection, regulate and prescribe the training, supervision, and duties of the persons providing police protection with respect to criminal or traffic matters within limits of the municipality and maintain, and regulate a suitable place of dention within the limits of the municipality for the safekeeoing of all persons arrested, and do all other things necessary or desirable for the policing of the municipality including, preserving the peace and order and proper exercise of police power.

5. Defendant **Margaret Ackley,** is Chief of Police, who, at all relevant times, was employed by the Police Department of New London, as such, shall have general managment and supervision of the Police Department of the City of New London, and such police department shall have all such autority with respect to the service of criminal process and the enforcement of the criminal laws as is vested by the general statutes in police officers. She is sued in her **individual capacity** as well as her **individual capacity**

6. Defendant **Lieutenant Brian Wright,** is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§ 7-276** and **7-294a,** primary functions as a police office include among other things, supervising subordinate, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as is vested by general statutes in police officers. He is sued in his **individual capacity** as well as his official capacity.

7. Defendant **Todd Bergeson,** is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§7-276** and **7-294a,** primary functions as a police officer include among other things, supervising subordinate, investigation of crime, and as a member of such police department, shall have all such authority with

respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He is sued in his individualcapacity as well as his official capacity.

8. Defendant **Sergeant Christina**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§ 7-276** and **7-294a**, primary functions as a police officer include among other things, supervising subordinate, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. She sued in her individual capacity as well as her official capacity.

9. Defendant **Sergeant Kevin McBride**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§7-276** and **7-294a**, primary functions as a police officer include among other things, supervising subordinate, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. She sued un her individual capacity as well as her offical capacity.

10. Defendant **Roger Newton**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§ 7-276 and 7-294a**, primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He sued in his individual capacity as well as his official capacity.

11. Defendant **Todd Lynch**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaining of **C.G.S. §§7-276 and 7-294a**, primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He sued in his individual capacity as well as his offical capacity.

12. Defendant **Zelinski**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§7-276 and 7-294a**, primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He sued in his individual as well as

his official capacity.

13. Defendant **Timothy Henderson**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§ 7-276** and **7-294a**, primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He sued in his individual capacity as well as his offical capacity.

14. Defendant **Liachenko**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§7-276** and **7-294a**, primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He sued in his individual as well as his official capacity.

15. Defendant **Pelchat**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§7-276** and **7-294a**, primary functions as a police office include among other things, investigating of crime, and as a member of such police department, shall have all such auhority with respect to the service of

criminal process, and enforecement of criminal law as in vested by general statues in police officers.

16. Defendant **Marcaccio**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of City of New London, as such, within the meaning of **C.G.S. §§ 7-276** and **7-294a**, primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. She is sued in her individual capacity as well as his official capacity.

17. Defendant **Melissa**, is a Police Officer, who, at all relevant times was employed by the Police Department of the City of New London, as such, within the meaning of **C.G.S. §§7-276** and **7-294a**, primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. She is sued in her individual capacity as well as his official capacity.

18. Defendant **Melissa Schafranski**, is a Police Officer of the City of New London, as such, within the meaning of **C.G.S. §§ 7-276** and **7-294a**, primary functions as a police officer include among other things, investigation of crime. and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. She is sued

in her individual caacity as well as his official capacity.

19. Defendant **Darrin Omara,** is a Police Officer, who, at all relevant times was employed by the the Police Department of New London, as such, within the meaning of **C.G.S. §§7-276** and **7-294a,** primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He sued on his individual as well as his offical capacity.

20. Defendant **Lamontagne,** is a Police Officer, who, at all relevant times was employed by the Police Department of the City of London, as such, within the meaning of **C.G.S. §§7-276** and **7-294a,** primary functions as a police officer include among other things, investigation of crime, and as a member of such police department, shall have all such authority with respect to the service of criminal process, and enforcement of criminal law as in vested by general statutes in police officers. He sued sued in his indivdual capacity as well as his official capacity.

21. Defendant **Scott E. Riordan,** is a Special Agent, who, at all relevant times was employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosive, a law enforcement officer of the United States with the meaning of **18. U.S.C. §2510(7),** an officer empowered by law to conduct invstigation of crime and make arrests for offenses enumerated under **18 U.S.C. §2516.** He is sued in his individual capacity as well as his official capacity.

22. Defendant **Wheeler,** is a Special Agent, who, at all relevant times was employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosive, a alw enforecement officer of the United States within the meaning of **18 U.S.C. §2510(7),** an officer empowered by law to conduct investigation of crime and make arrests for offenses enumerated under **18 U.S.C. §2516.** He is sued in his individual capacity as well as his official capacity.

23. Defendant **Robert Harrison,** is a Special Agent, who, at all relevant times employed by the Bureau of Alcohol, Tobacco, Firearms, Explosive, a law enforcement officer of the United States within the meaning of **18 U.S.C. §2510(7),** an officer empowered by law to conduct investigation of crime and make arrests for offenses enumerated under **18 U.S.C. §2516.** He is sued in his individual as well as his official capacity.

24. Defendant **Dewnnis C. Turman,** is a Special Agent, who, at all relevant times was employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosive, a law enforcement officer of the United States within the meaning of **18 U.S.C. §2510(7),** an officer empowered by law to conduct investigation of crime and make arrests for offenses enumerated under **18 U.S.C. §2516.** He is sued in his individual capacity as well as his official capacity.

25. Defendant **Guy N. Thomas,** is a Special Agent, who, at all relevant times was employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosive, a law enforcement officer of the United States within meaning of **18 U.S.C. §2510(7),** an officer empowered by law to conduct investigation of crime and make arrests for

offenses enumerated under **18 U.S.C. §2516.** He is sued in his individual capacity as well as his official capacity.

### III. FACTS

26. On or about November, 2009, the plaintiff was arrested on a criminal information, accusing him of violation of **Title 21, United States Code,** for conspiracy, possession, and distribute narcotics.

27. Based on information and belief, the plaintiff's arrest, extended from a joint investigation conducted by defendants Henderson, Lynch, Pelchut, and Newton, officers of the New London Police Department ("N.L.P.D."), and Riordan and Wheller, special agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosive ("A.T.F").

28. On October 6, 2010, the palintiff was released for federal custody after a jury trial where he was acquitted of all charges alleged in the criminal information.

29. Subsequently, the plaintiff returned to the City of New London after his release and hence in his passage, and travel around the city, he observed, defendants Newton, Pelchat, Lynch, and Henderson, being vigilant of his presence.

30. The defendants began to engage in routinely following, and survelling, the plaintiff and subjecting him to pretextual motor vehicle stops, and searches; however, prior to the plaintiff's arrest on the criminal information, he was not the subject of such pretextual stops or searches, it only became apparent after he was acquitted.

31. On January 18, 2011, the defendants Henderson and Lamontage stop the plaintiff's motor vehicle (2006 Impala), alleging the stop was based on a blown market plate light, succeeding under the pretext of smell of marijuana in the car after the stop.

32. The defendants requested, the plaintiff to exist the vehicle and move to the rear of the vehicle, and spread eagle, hands on the hood of the car, and legs spread, defendant Lamontagne search the plaintiff's person, removed a knife and money from his pocket, while defendant Henderson searched the car, after the search was finished, defendants returned the knife, and money and wrote him a warning ticket for the market plate light.

33. On January 22, 2011, the plaintiff while driving the same vehicle (2006 Impala), was stop again four (4) days later, by defendants Newton and Henderson, for the failure to display a front market plate, succeeding the smell of marijuna, once again became the pretext for the search, sergent McBride, verified it.

34. The defendants conducted the same line of search as described in the above-mentioned, with the exeception, defendants Newton, became very intrusive by making an exploratory investigation pobe through gripping the plaintiff's crotch/buttocks area, and hence unpon completion of the search, the plaintiff's knife and money was returned, defendant Newton wrote a traffic ticket, for failure to display a front market plate.

35. The plaintiff contested, defendant Newton's traffic ticket through the clerk office of Norwich Superior Courthouse;

however, the clerk office informed him, there were no record of of a traffic ticket being filed by N.L.P.D.

36. On February 5, 2011, defendants Newton, with Macaccio as a back up, several days later, stop the plaintiff once again in the same vehicle (2006 Impala), this time for tinted windows and failure to display front plate, and a search proceeded under video view by the police's dashbord camera.

37. The exertps of the search conducted by defendant Newton, is described as follow: Plaintiff step out of car; Defendant Newton reach into lower pockets; Reach inside socks; Reach into pockets again-"Why so much cash"; Reach into left socks; Grab under crotch; Grab and reach up crotch/buttocks more forcefully/ intrusively.

38. The defendants Lynch, and Pelche, arrived moments later, along with Macaccio, watched the search, with the execption Lynch grab into the plaintiff's buttocks again.

39. After exploratory investigation pobe of the plaintiff's crotch/buttocks area, defendant(s) Newton, in concert with Macaccio, Lynch, and Pelche, arrested the plaintiff for the same knife, discovered in his possession, in prior searches as set forth in ¶¶31-32-33-34.

40. The plaintiff was handcuff, place in defendant(s) Macaccio's police vehicle, charged with Carrying a Dangerous, (C.G.S. §53-206); and Weapon in Motor Vehicle, (C.G.S. §29-38), and transported to N.L.P.D., for booking, assisted by Newton, Pelche, and Lynch.

41. Upon arrival at N.L.P.D's booking, the plaintiff while handcuff, was search again by defendant Lynch, gripping at his buttock area.

42. Proceeding the search, defendants Newton, Lynch, and Pelchat, escorted the plaintiff handcuff to a side room, Lynch put him in a choke hold from behind, and slamed him face down on the floor, while Pelchal watched, and Segent Christina, stood at the door, threatening to tase him, and Newton pulled his pants down and conducted a body cavity search, and retrieved two (2) clear plastic baggies, alleged to be narcotics.

43. Defendant Christina, in concert with Lynch, Newton, and Pelchat, authorized the strip search pursuant to **C.G.S. §54-33k1**.

44. Pursuant to N.L.P.D.'s policy or custom: Prinsoner Handing and Supervision-G.O. 9.4, defendant Christina was not authorized to give permission to strip search, because it require, "written permission of the Chief of Police, or his or her agent, is required; the Shift Commander will serve as the Chief's desidnee for this purpose."

45. Pursuant to **C.G.S. §54-33k1**, dose not authorize, the defendants to conduct a body cavity search as described in **¶42**, other than by warrant authorizing such a search, shall specify that a search is required to be performed under sanitary conditions and conducted either by or under the supervision of a person licensed to practice medicine.

46. As a result of the above-mentioned searches as set forth in **¶¶ 36-37-38-39-41-and-42**, the plaintiff was arrested and charged with: Interfering with police, **(§53a-167)**; Possession of drug paraphemalia,

(§21a-267a); Possession of marijuana, (§21a-279c); Possession of marijuana within 1500 feet of a housing project, (§21a-279d); Possession of crack cocain with intent to sell, (§21a-278b); Possession of crack cocain with intent to sell within 1500 feet of a housing project, (§21a-278b).

47. In conjunction with the above-mentioned arrest for carrying a damgerous weapon as set forth in ¶39, probable cause did not exist, and the seizure were illegal for the purpose or justification of the search conducted at N.L.P.D.

48. Defendants purposely ignored the federal and state statutory requirements for a knife that contain a spring assist in opening and closure of the blade, that requires exertion applied to the blad by hand pursuant to 29 U.S.C. §1244, and C.G.S. §53-206, and hence under the circumstance particularized the arrest for a dangerous weapon, was based on a legal knife, defendants discovered, observed, and returned it, during prior searches as set forth in ¶¶32 and 34.

49. Defendant(s) Wright in concert with Newton, verified the criminal complaint of the alleged charges as set forth in ¶¶ 40 and 46, proceeding the search as described in ¶¶36 to 46.

50. The traffic infraction that prompt the stop by defendant(s) Newton as set forth in ¶36, the ticket was written by Pelchat in concert with Newton, but it took the same course, in the manner described in ¶35 (never appeared in the court's traffic record).

51. These same actions as described herein, exhibit itself once

again on March 3, 2011, when defendant(s) Newton, back up by
Schafranski, Omara, and Henderson, stopped a vehicle in which
the plaintiff was a passenger, because he had a outstanding
warrant.

52. Defendant(s) Newton in concert with Schefranski, Omara,
and Handerson, used the pretext, smell of marijuana to conduct the
sametype of intrusive search of the plaintiff as described in
¶37, and transported him to N.L.P.D.

53. Upon arrival at N.L.P.D.'s booking the plaintiff was
strip search, authorized by defendant(s) Bergeson, in concert
with Newton, and Henderson, who conducted the search.

54. In conjunction with these traffice stops and infractions
described herein, was under the basis of pretext to search and
the operating force behind such intrusive and unreasonable search
was based on the officers' training that narcotics dealers often
conceal contraband in their buttocks, and such municipal policy,
or custom, or usage, condone such search experienced by the
plaintiff.

55. These practice used in the search as described in ¶¶31 to
53, is in contravention of reasonable suspicion of secreting
contraband on person, and cannot be justify because the plaintiff
has been previously arrested for drugs, or suspected drug dealer/

56. Based on the February 5, 2011, motor vehicle stop and
search conducted by defendant(s) Newton as described in ¶¶36 to
46, and the ensuing drugs allegedly found, the ATF sepecial agents

Riordan, Wheeler, Turman, and Thomas, in concert with Newton and
NLPD, by criminal complaint, charged the plaintiff with: Possession
with intent to disribute 28 grams of more of cocain based, **21
U.S.C. §841(a)(1) and (b)(1)(B)(iii)).**

57. On March 4, 2011, pursuant to plaintiff's arrest on the
outstanding federal arrest warrant for narcotics violation,
apprehended by defendant(s) Newton on 3/3/11, Riordan, and
Wheeler, transported the plaintiff to his appearance at the
United States Courthouse in Hartford.

58. On February 17, 2012, pursuant to **Feb. R. Crim. P. 48(a),**
the United States dismiss the alleged criminal charges of narcotics
violation as set forth in **¶54**, and the State of Connecticut dismiss
the alleged criminal charges of carrying a dangerous weapon and
weapon in a motor vehicle from which the plaintiff was taken
into custody as set forth in **¶40**, and subsequently narcotics
charges as set forth in **¶46**.

59. Based upon the events of the video of the search conducted
by defendant(s) Newton and Lynch, as described in **¶¶36 to 39**,
and a video taken on October 20, 2010, where Newton was seen
planting drugs at the scene, during an arrest of a suspect on
drug-dealing charges, and a complaint for attempting to entice a
woman into a drug deal, so the federal and state government,
did-not believe that its evidence at the present time were
sufficient to prove the plaintiff's guilt beyond a reasonable
doubt.

60. The aforementioned videos, came to the attention of federal, state, and local agencies, based on a city man's allegations that defendant Newton planted drugs in which he obtained a copy of the patrol cruiser video from his attorney and took the video to the state's attorney and chief inspector.

61. The purpose for patrol cruisor video, is to monitore police's stop, search, arrest, and safety, pursuant to supervisor's review, provided for proper municipal authority to precribe policy and procedure to prevent such constitutional violations as set forth in ¶¶31 to 60.

62. In conjunction with defendant(s) Newton's improper and unprofessional in the NLPD, where there also been incidents of a officer allegedly slapped a womam at the Shrine nightclub at Foxwoods Resort Casino, including police officers, who responed when called by the SCADD detoxification center to help take a man to the hospital repeatedly punched and pepper spayed him when they arrived at the scene.

63. Such incidents incline, a breakdown in City's policy, with inadequate review of arrests by supervisor police officers suchas, Wright, Bergeson, Christina, and McBride, as set forth in ¶¶31 to 62.

64. Defendant Chief Ackley, who, oversee the management and supervision of subordinates under the execution of trust confided to policemen/women for, and authority of City municipal's charter that provide for a police department, is inadequate or

or neither followed nor enforced to prohibiting such improper and improfessional conduct in ¶¶31 **to 64.**

65. In conjunction with the govern, oversee, management, and supervision of NLPD, the Defendants abidicated their duty to supervise and monitor police officers' conduct, and allowed officers to exercise final authority without adequate supervision review, allowing a municipal custom to exist that encourage, or allow officers' conduct that cause illegal arrest and search as set forth in ¶¶31 **to 65.**

66. Among other things, it is this type of municipal parctice, that allowed the Defendants' harassment, and reprisal, subjecting the plaintiff to repeated stop, search, and arrest, based on a deep-seeded acrimonious malice, because he was acquitted of prior drugs charges initiated by Defendants under a joint investigation between the ATF and NLPD, as set forth in ¶¶26 **to 36.**

67. In conjunction with the harassment, and reprisal, Defendants stood by and watched, the illegality of their former officers' stop, search, arrest, and assault, maintaining a code of silence about the unconstitutionality of their action as set forth in ¶¶26 **to 66.**

68. Inasmuch, Defendants as a municipal corporation (City of New London), and chief of police (Margaret Ackley), given general administration, supervision, and discipline of police department, had contrutive notice of inadequate supervision, and monitoring police-misconduct in a longstanding or deep-embeded routine of its subordinates' routine failure to follow policy, and unconstitutional

action under a lack of systematic review of arrest, and search under city management.

69. In conjnuction with ¶¶29 to 68, Defendants knew or should have known their code of silence about police misconduct, municipal custom of condoning harassment, reprisal, assault, false arrest, and illegal search violated the plaintiff's constitutional rights.

70. The contours of the plaintiff's constitutional rights were sufficiently clear that a reasonable law enforcement officer would understand their actions as set forth in ¶¶29 to 69, violated the plaintiff's constitutional rights.

71. The plaintiff spent near a year of imprisonment as a result of the false arrest, and illegal search and the subject of harassment. harassment, reprisal, and assualt for exercising a constitutional right as set forth in ¶¶29 to 70.

72. Here, the Defendants' actions described in the herein complaint, is actionable under §1983, where the aforementioned policy or custom or usage, as practice were constitutional inadequate, and violated clearly established constitutional rights.

## IV. CAUSE OF ACTION

### I.  COUNT

73. Paragraphs 1 through 72 are realleged and incorporated as fully set forth herein.

74. Defendants in ¶¶5 to 25, and each of them, harassed, retaliated, and punished, the plaintiff for exercising his right to a jury trial by subjecting him to unconstitutional stop, seizure, search, and

assault, in contravention of the Sixth, and Fourteenth Amendment to the United States Constitution. Defendants acted willful, malice, wanton, and wrongful government action to plaintiff's constitutional guaranteed rights.

II.    COUNT

75. Paragraphs 1 through 74 are realleged and incorporated as fully set forth herein.

76. Defendants in ¶¶6 to 20, each of them participated engaged, engaged, authorized, watched, and failed to intervene, in the unconstitutional stops, subjecting the plaintiff to searches that was unreasonable, intrusive, atrocious, utterly intolerable, and deliberately permitting a pattern of illegal searches, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution. Defendants acted willful, malice, wanton, malfeasance, and reckless disregard of and indifference to the plaintiff's constitutionally guaranteed rights.

III.    COUNT

77. Paragraphs 1 through 76 are realleged and incorporated as fully set forth herein.

78. Defendants in ¶¶6 to 11, and 15 to 17, each of them participated, engaged, authorized, watched, and failed to intervene, in an unconstitutional arrest of the plaintiff, seizing him with no legal basis, and deliberately disregarded the fact, there were no probable cause to arrest within the scope of the general statute, and the arrest was a pretext for unreasonable search, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution.

Defendants acted willful, malice, wanton, malfeasance, and reckless disregard of and indifference to the plaintiff's constitutionally guaranteed rights.

### III.  COUNT

79. Paragraphs 1 through 78 are realleged and incorporated as fully set forth herein.

80. Defendants in ¶¶6 to 8, and 10 to 16, each of them participated, engaged, authorized, watched, and failed to intervene, subjected the plaintiff to an unconstitutional strip and cavity search that went beyond privacy, and bobily integerity, extending from an illegal seizure solely for a strip and cavity search, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution. Defendants acted willful, malice, wanton, malfeasance, and reckless disregard of and indifference to the plaintiff's constitutionally guaranteed rights.

### IV.  COUNT

81 Paragraphs 1 through 80 are realleged and incorporated as fully set forth herein.

82. Defendants in ¶¶8,10,11, and 15, each of them participated, engaged, authorized, watched, and failed to intervene, subjected the plaintiff to the use of excessive force, in an abusive unconstitutional strip and cavity search, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution. Defendants acted willful, malice, wanton, malfeasance, and reckless disregard of and indifference to the plaintiff's constitutionally guaranteed rights.

**V.   COUNT**

83. Paragraphs 1 through 82 are realleged and incorporated as fully set forth herein.

84. Defendants in ¶¶5 to 25, each of them participated, egaged, authorized, watched, and failure to intervene, subjected the plaintiff to a criminal information that was based on an illegal seizure, suceeding an illegal search in whcih the arrest was in concert with NLPD's law enforcement officers, underminded by ill motives to arrest him because he was acquitted of prior charges that was alleged against him by defendants' action is to retaliate and punish him in exercise of constitutional rights to equal protection, and it was done pursuant to §1985(2)(3), conspiracy to deprive plaintiff of his liberty, in contravention of the Fourth, Fifth, Sixth, and Fourteenth Amendment to the United States Constitution. Defendants conspired to conceal their misconduct; arrest without probable cause; unreasonable search; and to deprive the plaintiff's constitutionally guaranteed rights.

**VI.   COUNT**

85. Paragraphs 1 through 84 are realleged and incorporated as fully set forth herein.

86. Defendants in ¶¶5 to 25, each of them participated, engaged, authorized, watched, and failed to intervene, subjected the plaintiff to false arrest thus deprived him of substantive due process of his liberty interest to be free of criminal prosecution, based on illegal arrest, suceeded by criminal information, extending from unconstitutional seizure without probable cause, and

unreasonable[search]search in which the NLPD and AFT government, in concert, was charged by federal and state government, in contravention of the Fourt, and Fourteenth to the United States Constitution. Defendants acted willful, malice, wanton, malfeasance, and reckless disgard of and indifference to the plaintiff's constituiionally guaranteed rights.

## VII. COUNT

87. Paragraphs 1 through 86 are realleged and incorporated as fully set forth herein.

88. Defendants in ¶¶5 to 25, each of them participated, engaged, authorized, watched, and failed to intervene, subjected the plaintiff thus targeting with the purpose to utlize the criminal court to inflict unconstitutional injury by conducting illegal arrest, and unreasonable search, in the deprivation of legal rights that contradicts the basis premise of the constitutional guarantee to be free from unlawful seizure and search under the equal protection of the law, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution. Defendants acted under nonprivileged conduct, malicious bad faith to injury, and reckless disregard of and indifference to the plaintiff's constitutionally guaranteed rights.

## VIII. COUNT

89. Defendants in ¶¶6,8,10,11, and 15, each of them participated, engaged, authorized, and failed to intervene, subjected the

plaintiff to assault and battery, resulting in personal injury; phyical pain and suffering and mental and emotional suffering and hence sounding in state tort pursuant to **C.G.S. §52-572h(b)**, in contravention of Article First §§7 and 10 of the Connecticut Constitution. Defendants acted grossly negligent, knowingly and intentionally and excess of statutory authority and nonprivileged conduct, and under a duty of care pursuant to municipal charter.

**IX.   COUNT**

90. Paragraphs 1 through 89 are realleged and incorporated as fully set forth herein.

91. Defendants in **¶¶5 to 25**, participated, engaged, authorized, watched, and failed to intervene, inflicted mental and emotional distress by subjecting the plaintiff to uncinstitutional arrest, seizure, and search thus punished him without clear warrant of law, sounding in state tort pursuant to **C.G.S. §52-572h(b)**, in contravention of Article First §9 and 10 of the Connecticut Constitution. Defendants acted pursuant to a municipal charter, excess of statutory authority, and grossly negligent and nonprivileged conduct.

**X.     COUNT**

92. Paragraphs 1 through 91 are realleged and incorporated as fully set forth herein.

93. Defendants in **¶¶4 and 5**, each of them pursuant to municipal policy, custom, or usage and hence a deficiency in training, and supervision that caused the constitutional injury to the plaintiff,

where there were repeated complaints of constitutional violation, and a pattern of the police misconduct, is a result of the city's deliberate indifference to the plaintiff's constitutionally guaranteed rights, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution.

### IX.   COUNT

94. Paragraphs 1 through 93 are realleged and incorporated as fully set forth herein.

95. Defendants in ¶¶4 and 5, each of them purusant to municipal policy, custom, usage and hence officers' training that narcotics dealers often conceal contraband in their buttock thus caused unconstitutional strip and cavity search of the plaintiff's person, beyond bodily interity, and in violation of statutory requirement and without proper authorization, and utterly in intolerable under civilized standard that is accepted in society, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution. Defendants acted malfeasance, callous indifference, and reckless disregard of and indifference to the plaintiff's constitutionally guaranteed rights.

### X.   COUNT

96. Paragraphs 1 through 95 are realleged and incorporated as fully set forth herein.

97. Defendants in ¶¶6 to 9, each of them pursuant to municipal policy, custom, or usage, failed to execute adequate supervision, and monitore their subordinats' conduct and verified and authorized arrest, without probable cause, unconstitutional seizure and

search and excess force, and assult and battery under a code of silence of subordinates' misconduct thus a direct cause of the deprivation of the plaintiff's constitutional rights, in contravention of the Fourth, and Fourteenth Amendment to the United States Constitution. Defendants acted willful, malice, wanton, malfeasance, callous indifference, and reckless disregard of and indifference to the plaintiff's onstitutional injury.

## V. PRAYER FOR RELIEF

Plaintiff request that the court grant the following relief:

**A. Issue a declaratory judgement**

1. The physical abuse of the plaintiff by defendants violated the plaintiff's right under the Fourth, and Fourteenth Amendment to the United States Constitution.

2. Defendants' seizure, search, and arrest violated the plaintiff's rights under the Fourth, and Fourteenth Amendment to the United States Constitution.

3. Defendants punished the plaintiff without clear warrant of law, violated the plaintiff's rights under Article First §9 of the Connecticut Constitution.

4. Defendants' actions pursuant to municipal policy, custom, or usage, violated the plaintiff's right under the Fourth, and Fourteenth Amendment to the United States Constitution.

5. Defendants' harassed, retiliated, and punished the plaintiff in the exercise of his constitutional rights, and equal protection, violated the plaintiff's right pursuant to §1983, and mental and emotional suffering under

state law.

**B. Issue an injunction ordering defendants**

    1. Prohibit defendants, their subordinates, agents, employees, successor in office, and all other person in action, concert, and participate with them from punishment, harassment, and retiliation against the plaintiff.

**C. Award compensatory damages in the following amounts**

    1. 150,000,00 jointly and sveraly against the defendants, each of them, for phyical and emotional injuries sustained as a result of execessive force, and assult and battery, and unconstitutional seizure, search, and arrest, and harassment and retiliation.

**D. Award punitive damages in the following amounts**

    1. 250,000,00 jointly and severally against the defendants, each of them.

### VERIFICATION

Pursuant to 28 U.S.C. §1746, the plaintiff hereby declare under the penalty of perjury the foregoing and its contents is true and correct.

Dated: February _5_ , 2014

                            *GerJuan Tyus*
                            GerJuan Tyus
                            1153 East St. South
                            Suffield, CT 06085