UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GERJUAN TYUS,
                    Plaintiff,

v.                                                  NO. 3:13-cv-1486(SRU)

ROGER NEWTON, et al.,
                    Defendants.

**RULING ON NEW LONDON DEFENDANTS' MOTION TO DISMISS**

      Gerjuan Tyus is currently incarcerated at Northern Correctional Institution in Somers,

Connecticut. In October 2013, in both this Court and the Connecticut Superior Court for the Judicial

District of New London, Tyus filed a civil rights action against defendants Roger Newton, City of

New London, County of New London, City of New London Police Department, Chief of New

London Police Department Margaret Ackley, Lieutenants Brian Wright and Todd Bergeson,

Sergeants Christina and Kevin McBride, Officers Todd Lynch, Zelinski, Timothy Henderson,

Liachenko, Marcaccio, Pelchat, Melissa Schafranski, Darrin Omara and Lamontagne, and Bureau of

Alcohol, Tobacco and Firearms ("ATF") Agents Wheeler, Scott Riordan, Robert Harrison, Dennis

Turman and Guy Thomas. On November 19, 2013, the defendants removed the state-court action to

this Court. (*See Tyus v. City of New London, et al.*, Case No. 3:13cv1726(SRU), Pet. Removal, Doc.

No. 1.)

      On January 6, 2014, I granted a motion to consolidate the present case with the action that

had been removed to this Court by the defendants, *Tyus v. City of New London, et al.*, Case No.

3:13cv1726(SRU). The present case is the lead case and the member case, *Tyus v. City of New

London, et al.*, Case No. 3:13cv1726(SRU), has been closed.

      On April 29, 2014, I granted the plaintiff leave to file an amended complaint that named the

1

City of New London, Chief of New London Police Department Margaret Ackley, Lieutenants Brian Wright and Todd Bergeson, Sergeant Christina, Sergeant Kevin McBride, Officers Roger Newton, Todd Lynch, Timothy Henderson, Melissa Schafranski, Darrin Omara, Zelinski, Liachenko, Marcaccio, Pelchat, Lamontagne and ATF Agents Wheeler, Scott Riordan, Robert Harrison, Dennis Turman and Guy Thomas as defendants. I also denied without prejudice the motion to dismiss filed by the New London defendants and dismissed the Sixth Amendment claims in Count 1 of the Amended Complaint and the conspiracy claims contained in Count V of the Amended Complaint pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all claims in Count I and the conspiracy claims in Count V of the Amended Complaint have been dismissed. The remaining federal claims under the Fourth, Fifth and Fourteenth Amendments and state law tort and constitutional claims as set forth in Counts II, III(a), III(b), IV, V, VI, VII, VIII, IX, X, XI and XII[1] remain pending against all defendants in their individual and official capacities.

The New London defendants[2] have moved to dismiss the claims against them pursuant to Rule 12(b)6. The plaintiff has filed a memorandum in opposition to the motion.

## I.      Standard of Review

When deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)6, the court accepts as true all factual allegations in the complaint and

---

[1] There are two counts labeled Count III, two counts labeled Count IX and two counts labeled Count X. I construe the first Count III as Count III(a) and the second Count III as Count III(b). I construe the second Count IX as Count XI and the second Count X as Count XII. (*See* Amended Complaint at 21-22, 25-27).

[2] The New London defendants include: the City of New London, Chief of New London Police Department Margaret Ackley, Lieutenants Brian Wright and Todd Bergeson, Sergeant Christina, Sergeant Kevin McBride, Officers Todd Lynch, Timothy Henderson, Melissa Schafranski, Darrin Omara, Zelinski, Liachenko, Marcaccio, Pelchat. Officer Roger Newton no longer works for the City of New London. He is represented by separate counsel, and has not

draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court's review is limited to "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken" *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). The court considers not whether the plaintiff ultimately will prevail, but whether he has asserted sufficient facts to entitle him to offer evidence to support his claim. *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed and a pro se complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (*per curiam*) (internal quotation marks and citations omitted).

---

moved to dismiss the Amended Complaint.

**II.    Facts**

      The facts as they relate to the defendants identified as the New London defendants are taken from the Amended Complaint and are assumed to be true for purposes of this motion. In October 2010, a jury in this Court acquitted the plaintiff of all federal criminal charges in connection with an arrest that occurred in November 2009. *See United States, et al. v. Muller, et al.*, No. 3:09cr247(RNC) (Judgment of Acquittal after Jury Trial, Doc. No. 494). After his release from custody, Officers Henderson, Lynch, Pelchut and Newton began to follow the plaintiff as he drove around City of New London.

      On January 18, 2011, Officers Henderson and Lamontagne pulled the plaintiff over because they claimed the light on his marker plate was out. The officers claimed they smelled the odor of marijuana in the car and asked the plaintiff to exit the vehicle. Officer Lamontagne searched the plaintiff and removed cash and a knife from his pockets and Officer Henderson searched the plaintiff's vehicle. Officers Henderson and Lamontagne then returned the cash and the knife to the plaintiff and issued him a warning ticket for the defective marker plate light.

      On January 22, 2011, Officers Henderson and Newton pulled the plaintiff over because his vehicle had no front marker plate. The officers said they smelled the odor of marijuana in the plaintiff's car and asked him to exit the vehicle. Officer Newton then searched the plaintiff. During the search, Officer Newton repeatedly reached into the plaintiff's pockets and gripped the plaintiff's buttocks and crotch. Officer Newton removed cash and a knife from plaintiff. After the search, Officer Newton returned the cash and the knife to the plaintiff and issued him a ticket for failure to display a front marker plate.

      Sergeant Kevin McBride verified the report prepared by Officer Newton regarding the

4

stop and search of the plaintiff on January 22, 2011. When the plaintiff later attempted to challenge the traffic violation, a clerk at the Norwich Superior Court informed him that there was no traffic violation on record.

On February 5, 2011, Officer Newton pulled the plaintiff over for failure to display a front marker plate and for having tinted car windows. Officer Marcaccio arrived at the scene just after Officer Newton pulled the plaintiff over. Officer Newton asked the plaintiff to exit the vehicle. Officers Lynch and Pelchat then arrived at the scene.

Officer Newton conducted a search of the plaintiff. He repeatedly reached into the plaintiff's pockets and forcefully grabbed under and reached up into the plaintiff's buttocks and crotch area during the search. Officer Newton removed cash and a knife from the plaintiff. Officers Pelchat and Marcaccio stood by and observed the search. Officers Newton, Lynch, Pelchat and Marcaccio arrested the plaintiff on charges of carrying a dangerous weapon and possession of a weapon in a motor vehicle. Officer Marcaccio transported the plaintiff to the New London Police station.

At the station during booking, Officer Lynch searched the plaintiff again. Sergeant Christina then authorized a body-cavity search of the plaintiff without seeking permission from the Chief of Police. Officers Newton, Lynch and Pelchat escorted the plaintiff to a room in order to perform the body cavity search. Officer Lynch put the plaintiff in a choke-hold from behind and slammed him to the floor while Officer Pelchat and Sergeant Christina looked on. Sergeant Christina threatened to use a taser on the plaintiff. Officer Newton pulled the plaintiff's pants down, conducted a body cavity search and retrieved two plastic bags that allegedly contained narcotics.

5

After the search, officers charged the plaintiff with additional criminal violations including: interfering with a police officer, possession of drug paraphernalia, possession of marijuana, possession of marijuana within 1500 feet of a housing project, possession of crack cocaine with intent to sell and possession of crack cocaine with intent to sell within 1500 feet of a housing project. Lieutenant Brian Wright verified the criminal complaint report prepared by Officer Newton regarding the stop and searches of the plaintiff on February 5, 2011. Subsequently, the plaintiff was able to post bond and officers released him from custody.

On February 28, 2011, a United States Magistrate Judge issued a warrant for the plaintiff's arrest on federal criminal charges based on the narcotics found on the plaintiff during the body cavity search conducted on February 5, 2011 by New London officers. *See United States v. Tyus*, No. 3:11cr45(EBB) (Docket Entry 1.) On March 3, 2011, Officers Newton, Omara, Henderson and Schafranski stopped the plaintiff's vehicle because there was an outstanding federal warrant for his arrest. Officer Newton asked the plaintiff to exit the vehicle because he said he smelled the odor of marijuana in the car.

Officer Newton conducted a search of the plaintiff as Officers Omara, Henderson and Schafranski looked on. Officer Newton forcefully grabbed under and reached up into the plaintiff's buttocks and crotch area while searching him. Officer Newton removed cash and a knife from the plaintiff, arrested the plaintiff pursuant to the outstanding federal arrest warrant as well as on charges of possession of a dangerous weapon and then transported him to the New London Police station. At the station, Lieutenant Bergeson authorized a body-cavity search of the plaintiff. Officers Newton and Henderson conducted the search as Lieutenant Bergeson looked on.

6

On March 4, 2011, ATF Agents Riordan and Wheeler transported the plaintiff to federal court for his arraignment on the charge of possession of narcotics with intent to distribute in violation of federal criminal statutes 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). On February 17, 2012, the United States moved to dismiss the federal criminal charges against the plaintiff after they became aware that one of the arresting New London Police officers had been identified as having planted drugs on a suspect during an arrest. *See United States v. Tyus*, No. 3:11cr45(EBB) (Doc. No. 71.) On February 21, 2012, the federal judge assigned to the plaintiff's criminal case, granted the motion to dismiss. (*See id.* at Doc. No. 72.) Tyus claims that the State of Connecticut later dismissed the weapon and drug charges that were the basis for his arrest on February 5, 2011.

## III.    Discussion

The New London defendants argue that the plaintiff has failed: (1) to assert any facts regarding Officers Zelinski and Liachenko; (2) to state a claim of false arrest with regard to the February 5, 2011 and March 3, 2011 arrests; (3) to allege the personal involvement of defendants Ackley, Wright, Bergeson, Christina and McBride in the alleged constitutional violations; (4) to allege that a private right of action exists under Article I, sections 7, 9 and 10 of the Connecticut Constitution; (5) to allege facts to state a claim of negligent or intentional infliction of emotional distress; and (6) to state a claim of municipal liability against the City of New London. The plaintiff's opposition to the motion addresses some of these arguments.

As a preliminary matter, the motion to dismiss includes a section on the conspiracy claims that were included in the Amended Complaint in Count V. On April 29, 2014, I dismissed the conspiracy claims without prejudice to the plaintiff's re-pleading those claims within thirty

days. Because the plaintiff did not re-plead the conspiracy claims, those claims are not in the case.

### A.        Officers Zelinski and Liachenko

The defendants argue that the plaintiff has failed to assert any facts with regard to conduct by Officers Zelinski and Liachenko. The plaintiff identifies these defendants as employees of the New London Police Department.

Other than in the section of the Amended Complaint including a description of each defendant, the plaintiff does not otherwise refer to Officers Zelinski and Liachenko. As such, the plaintiff has not alleged that either defendant violated his federally or constitutionally protected rights or his rights under state law.

In his response to the motion to dismiss dated July 6, 2014, the plaintiff alleges that Officers Zelinski and Liachenko were present during Officer Newton's frisk search of him on January 22, 2011. The plaintiff may not, however, amend the amended complaint in a memorandum in opposition to a motion to dismiss. *See, e.g., Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss"); *Walia v. Napolitano*, 986 F. Supp. 2d 169, 184 (E.D.N.Y. 2013) ("Plaintiff cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss") (internal quotation marks and citations omitted); *Allah v. Poole*, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) ("a memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint").

8

I will not grant the plaintiff leave to file a second amended complaint to add allegations against defendants Zelinski and Liachenko because any claims against them regarding the January 22, 2011[3] search would be barred by the statute of limitations. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that, in Connecticut, the general three-year personal injury statute of limitations period set forth in Connecticut General Statutes § 52-577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983). The motion to dismiss is granted with respect to defendants Zelinski and Liachenko for failure to state a claim on which relief may be granted.

### B.      False Arrest Claims

The defendants contend that the plaintiff has failed to state a claim of false arrest regarding both the February 5, 2011 and March 3, 2011 arrests. The defendants argue that there was probable cause to arrest the plaintiff on February 5, 2011 and the arrest by Officer Newton on March 3, 2011 was made pursuant to a valid arrest warrant.

The Fourth Amendment's protections include the right to be free from unreasonable "seizures." *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). An allegation that a criminal prosecution was initiated against an individual without probable cause arises under the Fourth Amendment rather than the Fourteenth Amendment's substantive due process provision. *See Albright v. Oliver*, 510 U.S. 266, 274-75 (1994).

"Claims for false arrest or malicious prosecution, brought under [Section] 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are

---

[3] It is doubtful that Tyus could allege a plausible claim against Zelinski and Liachenko for failing to intervene to stop the frisk search on January 22, 2011. Frisk searches are generally brief and the squeezing alleged to have occurred while Tyus's pockets were searched is unlikely to have been readily observable.

'substantially the same' as claims for false arrest or malicious prosecution under state law."
*Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Under Connecticut law, "'[f]alse
imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of
another.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir.) (quoting *Outlaw v. City of
Meriden*, 43 Conn. App. 387, 392, 682 A.2d 1112, 1115 (1996), *cert. denied*, 522 U.S. 818
(2007)). "It is well-established that probable cause is a complete defense to claims of false
imprisonment and false arrest." *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007)
Probable cause only exists when police officers have "knowledge or reasonably trustworthy
information of facts and circumstances that are sufficient to warrant a person of reasonable
caution in the belief that the person to be arrested has committed or is committing a crime."
*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause does not require a police
officer to be certain that the individual arrested will be prosecuted successfully. *See Krause v.
Bennett*, 887 F.2d 362, 371 (2d Cir. 1989).

Probable cause is presumed when the arrest is made pursuant to a warrant issued by a
neutral magistrate. *See Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007) ("Ordinarily, an
arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable
because such warrants may issue only upon a showing of probable cause."). A plaintiff can
overcome this presumption by demonstrating that his right not to be arrested without probable
cause was violated when "the officer . . .'knowingly and intentionally, or with reckless disregard
for the truth, made a false statement ...' or omitted material information," and where "such false
or omitted information was 'necessary to the finding of probable cause.' " *Soares v. Connecticut*,
8 F.3d 917, 920 (2d Cir. 1993) (citations omitted).

### 1.      March 3, 2011 Arrest

The defendants argue that Officer Newton had probable cause to arrest the plaintiff on March 3, 2011 because a valid arrest warrant had been issued by a federal Magistrate Judge. The plaintiff concedes that an arrest warrant had been issued for his arrest on federal criminal charges. There are no allegations that ATF Agent Riordan, who applied for the arrest warrant, materially misled the Magistrate Judge into believing that probable cause existed for the plaintiff's arrest.

In opposition to the motion to dismiss, the plaintiff now contends that the affidavit of ATF Agent Riordan contained inaccurate information. The plaintiff did not include those allegations in the Amended Complaint. The plaintiff may not now amend his Amended Complaint by asserting new allegations regarding the of veracity of statements in the affidavit in support of the arrest warrant in his memorandum in opposition to the motion to dismiss. *See, e.g., Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Walia v. Napolitano,* 986 F. Supp. 2d 169, 184 (E.D.N.Y. 2013); *Allah v. Poole*, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007). I will not grant the plaintiff leave to file a second amended complaint to add new allegations regarding the viability of the warrant for his arrest because any such false arrest claim would be barred by the statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) (statute of limitations for a claim of false arrest, which is a "species" of false imprisonment, begins to run "when the alleged false imprisonment ends." An alleged false imprisonment ends when "the victim becomes held pursuant to [legal] process—when, for example, he is ... arraigned on charges."*)* (emphasis omitted).[4]

---

[4] The docket in the plaintiff's federal criminal case reflects that he was arraigned on April 8, 2011. *See United States v. Tyus*, No. 3:11cr45(EBB) (Docket Entry No. 16.) The plaintiff first

Probable cause for the plaintiff's arrest on March 3, 2011 is presumed because Officers Newton, Lynch, Pelchat and Marcaccio arrested him pursuant to an arrest warrant issued by a federal magistrate judge. There are no timely allegations to overcome that presumption. Accordingly the plaintiff's false arrest claim fails. The motion to dismiss is granted with respect to the claim that defendants Newton, Lynch, Pelchat and Marcaccio falsely arrested him on March 3, 2011.

### 2.    February 5, 2011 Arrest

The defendants contend that Officer Newton had probable cause to arrest the plaintiff on a charge of carrying a dangerous weapon on February 5, 2011. Tyus alleges that Officer Newton did not have probable cause to search or arrest him after pulling him over for a traffic violation that day. He alleges that Officer Newton claimed to have smelled marijuana in his vehicle after he pulled him over for a traffic violation, and that based on his suspicion that the plaintiff had been using marijuana in the vehicle, Officer Newton ordered him to step out of his car so that he could conduct a pat-down search. The plaintiff alleges that the pat-down search was more intrusive than necessary. The plaintiff claims that Officer Newton found a knife in his possession, which was the same knife that he had possessed when he was pulled over on January 18 and 22, 2011. The officers who pulled the plaintiff over on those two prior occasions, one of whom was Officer Newton, did not arrest the plaintiff on weapon or any other charges, but instead permitted him to leave with only a traffic violation citation. On February 5, 2011, however, Officers Newton, Lynch, Pelchat and Marcaccio decided to charge the plaintiff with possession of a dangerous weapon and possession of a weapon in a motor vehicle in violation of

---

asserted that the search warrant affidavit was inaccurate in his memorandum in opposition to the motion to dismiss, which was filed on July 9, 2014, more than three years later.

Connecticut General Statutes §§ 29-38 and 53-206.

The plaintiff contends that probable cause did not exist for the search that took place outside his vehicle because there was no basis for Officer Newton's suspicion of marijuana use. The defendants do not address the legality of the pat-down search. The plaintiff also argues that the type of knife he possessed did not have the necessary characteristics to be illegal to carry under the relevant statute, and that no reasonable officer would believe otherwise, so there was no probable cause to arrest him. But even if there was probable cause to arrest him for carrying the knife, it never would have been discovered but for the challenged pat-down search. If, as Tyus alleges, the alleged suspicion of marijuana use was pretextual and the search unlawful, then the knife was fruit of the poisonous tree. The plaintiff also argues that probable cause did not exist for the additional criminal charges that were brought against him after the body cavity search was conducted at the New London Police Department later on February 5, 2011, but the defendants do not address that claim or the claim regarding the legality of the body cavity search.

I conclude that the plaintiff has asserted sufficient facts to state a plausible claim that Officers Newton, Lynch, Pelchat and Marcaccio arrested him without probable cause on February 5, 2011. The motion to dismiss is denied with respect to the claim of false arrest in connection with the February 5, 2011 arrest on dangerous weapon charges.

### C. Personal Involvement of Chief of Police Ackley, Lieutenants Wright and Bergeson and Sergeants Christina and McBride

The defendants argue that the plaintiff has failed to sufficiently allege the involvement of supervisory officials Chief Ackley, Lieutenants Wright and Bergeson, and Sergeants Christina and McBride in the alleged violations of the plaintiff's constitutional rights. To recover money damages under section 1983, the plaintiff must show that these defendants were personally

involved in the constitutional violations. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show personal involvement by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct. *See Colon*, 58 F.3d at 873 (citation omitted). In addition, the plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that a supervisor can be held liable only "through the official's own individual actions." *Id.* at 676. That decision arguably casts doubt on the continued viability of some of the categories for supervisory liability. The Second Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal*. *See Rispardo v. Carlone*, 770 F. 3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*."); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain

constitutional violations," but finding it unnecessary to reach the impact of *Iqbal* on the personal involvement requirements set forth in *Colon*, 58 F.3d at 873). Because it is unclear whether *Iqbal* overrules or limits *Colon*, I will continue to apply the categories for supervisory liability set forth in *Colon*.

### 1.    Chief Ackley

The defendants contend that the plaintiff has not alleged that Chief Ackley was personally involved in the traffic stops, searches or arrests of the plaintiff. The plaintiff alleges that Chief Ackley, as a supervisor and administrator who is responsible for the discipline of police officers, should have known about the misconduct that occurred when members of the New London Police Department pulled him over for alleged traffic violations, searched him and arrested him in 2011. The plaintiff generally alleges that there was a breakdown in the City's policies and inadequate review of arrests made by New London Police officers.

These allegations are conclusory and are not supported by any facts. There are no factual allegations to suggest that Chief Ackley was aware of the incidents involving the plaintiff in January, February and March 2011. Nor does the plaintiff allege that he or anyone else put Chief Ackley on notice of alleged unconstitutional conduct by New London Police officials. The plaintiff has failed to allege the personal involvement of Chief Ackley in the violations of his constitutional rights. The motion to dismiss is granted with respect to the claims against defendant Ackley in her individual capacity on the ground of lack of personal involvement.[5]

---

[5] Tyus does not appear to seek any declaratory or injunctive relief against defendant Ackley, and to the extent that he seeks to include any claim against her in her official capacity, it is duplicative of his claim of municipal liability against the City of New London, discussed below. Accordingly, the motion to dismiss is granted with respect to all claims against defendant Ackley in her official capacity as well.

15

### 2.      Lieutenant Wright and Sergeant McBride

The plaintiff claims that Sergeant Kevin McBride verified the report prepared by Officer Newton regarding the stop and search that occurred on January 22, 2011. The plaintiff alleges that Lieutenant Brian Wright verified the criminal complaint report prepared by Officer Newton regarding the stop and searches that occurred on February 5, 2011.

The plaintiff contends that by signing off on the incident reports defendants McBride and Wright became aware of the January 22, 2011 traffic stop and pat-down search conducted by Officers Newton and Henderson and the February 5, 2011 traffic stop, pat-down search, and body cavity search conducted by Officers Newton, Lynch, Pelchat and Marcaccio as well as his arrest by those officers on various criminal charges. The plaintiff has alleged sufficient facts to plausibly demonstrate that defendants Wright and McBride became aware of the illegal traffic stops, searches and false arrest of the plaintiff, but failed to take any action to correct that unconstitutional conduct. Accordingly, the motion to dismiss is denied on the ground that the plaintiff has alleged no facts against defendants Wright and McBride regarding the traffic stops, searches and seizure of the plaintiff that occurred on January 22, 2011 and February 5, 2011.

### 3.      Sergeant Christina and Lieutenant Bergeson

The plaintiff has alleged that Sergeant Christina authorized and was present for the body cavity search conducted by Officers Newton on February 5, 2011. In addition, the plaintiff has alleged that Lieutenant Bergeson authorized the body cavity search conducted by Officers on March 3, 2011. The plaintiff claims that both searches were illegal, intrusive, and unconstitutional. I conclude that those allegations demonstrate the involvement of defendants Christina and Bergeson in the various searches of the plaintiff. The motion to dismiss is denied with respect to defendants

Christina and Bergeson on the ground of lack of personal involvement.

###    D.      Municipal Liability

The defendants argue that the plaintiff has failed to state a claim of municipal liability

against the City of New London. In order to impose liability on a municipal entity under section

1983 for a violation of constitutional rights, a plaintiff must show that the violation was caused by a

municipal policy or custom. *See Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Municipal policies "include[] the decisions of a government's lawmakers, the acts of its

policymaking officials, and practices so persistent and widespread as to practically have the force of

law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

A municipality, however, cannot be held liable "solely because it employs a tortfeasor – or

in other words . . . on a respondeat superior theory." *Monell*, 436 U.S. at 691. Instead, municipal

liability may be established if a plaintiff can "demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the alleged injury" or that "action pursuant to official

municipal policy or custom caused the alleged constitutional injury." *Cash v. Cnty of Erie*, 654 F.3d

324, 333 (2d Cir. 2011) (internal quotation marks and citations omitted).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction. In

the latter respect, a city's policy of inaction in light of notice that its program will cause

constitutional violations is the functional equivalent of a decision by the city itself to violate the

Constitution." *Id.* at 334 (internal quotation marks and citation omitted). Thus, a plaintiff may

"establish municipal liability by showing that a municipal policy or custom existed as a result of the

municipality's deliberate indifference to the violation of constitutional rights, either by inadequate

training or supervision." *Russo v. City of Hartford*, 341 F. Supp. 2d 85, 107 (D. Conn. 2004).

17

Liability based on a failure to train is the most tenuous form of municipal liability under *Monell*. To state a claim under section 1983, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under section 1983." *Connick*, 131 S. Ct. at 1359–60 (citing *Canton v. Harris*, 489 U.S. 378, 388-89 (1989) (internal quotation marks omitted)). The most important consideration is "whether the facts demonstrate the policymaker's failure to train or supervise was the result of a 'conscious choice' rather than mere negligence." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (quoting *Canton*, 489 U.S. at 389).

Here, the plaintiff claims that he suffered violations of his constitutional rights because the City of New London failed to properly train the members of the New London Police Department in how to conduct pat-down and body cavity searches. In addition, the plaintiff's allegations may be construed to state a claim that there was a policy or custom of New London Police officers to engage in pretextual or arbitrary traffic stops, detentions, searches and arrests without reasonable suspicion or cause. The plaintiff suggests that the City of New London failed to properly train its officers to prevent the unconstitutional conduct that occurred during the multiple traffic stops and searches, as well as his arrest in 2011.

The plaintiff generally alleges that there were repeated complaints of constitutional violations and a pattern of police misconduct, but refers to another specific incident that occurred in October 2010, and involved a traffic stop by Officer Newton that resulted in an arrest after narcotics were allegedly found near the suspect's vehicle. The charges against the individual were subsequently dismissed after a videotape taken at the scene of the traffic stop allegedly showed

Officer Newton planting narcotics near the individual's vehicle. The plaintiff also mentions an incident during which an unidentified officer allegedly slapped a woman at a casino nightclub and another incident during which unidentified officers allegedly punched and pepper-sprayed a man who needed to be taken to the hospital from a detoxification center.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (quoting *Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). The plaintiff has alleged that in the first three months of 2011, New London Police officers pulled him over three times for alleged traffic violations, conducted intrusive pat-down searches on at least three occasions, searched his vehicle without permission on at least one occasion, and arrested him without probable cause on one occasion. In addition, officers conducted body cavity searches on two occasions.

In view of the number of alleged unconstitutional traffic stops, searches, and arrests involving the plaintiff and at least one other individual prior to the incidents involving the plaintiff, I conclude that the plaintiff has alleged sufficient facts to state a plausible claim that the City of New London had a custom or policy of tolerating police misconduct and acted with deliberate indifference by poorly training or supervising its officers regarding motor vehicle stops, detentions, pat-down and body cavity searches, and arrests. *See Goode v. Newton*, 2013 WL 1087549, at *8 (D. Conn. Mar. 14, 2013) (denying motion to dismiss City of New London on ground that non-conclusory allegations of one prior incident of falsifying a police report and manufacturing criminal charges in addition to the two incidents of manufactured criminality in amended complaint raised plausible inference that City had informal custom of tolerating misconduct by its officers and that custom caused the plaintiff's constitutional violations); *Castilla v. City of New York*, No. 09 Civ.

5446(SHS), 2012 WL 3871517, at **4-5 (S.D.N.Y. Sept. 6, 2012) (denying motion for judgment on the pleadings regarding municipal liability because plaintiff alleged "a string of incidents in which she was victimized by multiple officers in multiple locations, both on and off City property" as well as "various other instances of male police officers taking sexual advantage of females under their custody or control"); *Michael v. County of Nassau*, No. 09-CV-5200(JS)(AKT), 2010 WL 3237143, at *4 (E.D.N.Y. Aug. 11, 2010) (denying motion to dismiss municipal liability claims against County because multiple denials of plaintiff's rights over a long, continuous time period by at least five officers created "plausible inference that Nassau County has an informal policy or custom of at least tolerating police misconduct . . . Likewise, the alleged involvement of numerous officers, the mocking Plaintiff allegedly received when invoking his right to counsel, and the headquarters location, suffices to suggest that Nassau County poorly trained and/or supervised its officers concerning the need not to violate suspects' civil rights."). Accordingly, the motion to dismiss is denied with respect to the claims against the City of New London.

> ### E.      Connecticut Constitutional Claims

The plaintiff alleges that defendants Wright, Christina, Newton and Lynch violated his rights under Article I, sections 7 and 10, and all individual defendants violated his rights under Article I, sections 9 and 10 of the Connecticut Constitution. Article 1, section 7 of the Connecticut Constitution provides that "people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affidavit." Conn. Const. art. 1, § 7. Article 1, section 9 provides that [n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn.

Const. art. 1, § 9. Article 1, section 10 provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administrated without sale, denial or delay." Conn. Const. art. 1, § 10.

### 1.     Article I, Section 10

The defendants contend that the plaintiff has no private right of action for money damages under Article I, section 10. There are no cases in which a Connecticut court has recognized a private right of action under Article I, section 10 of the Connecticut Constitution. *See Sentementes v. General Elec. Co.*, Civil Action No. 3:14-CV-00131(VLB), 2014 WL 2881441, at *10 (D. Conn. June 25, 2014) (dismissing claim that defendants violated "Article I, section 10 of the Connecticut state constitution . . . [because] Connecticut courts do not recognize a private right of action under that clause"); *Thibault v. Barkhamsted Fire Dist.*, No. CV126008093S, 2013 WL 6038259, at *4 (Oct. 21, 2013) (refusing to "recognize a cause of action for alleged violations of article first, § 10 of the Connecticut constitution"); *Marinella v. Town of Darien*, No. 3:07-cv-910(CFD), 2010 WL 3123298, at *5 (D. Conn. Aug. 9, 2010) (no cause of action under Article I, sections 8 or 10 of the Connecticut constitution). Instead, the Connecticut Supreme Court has held to the contrary. *Binette v. Sabo*, 244 Conn. 23, 32, 710 A.2d 688, 691-92 (1998) (Article 1, section 10 "does not itself create new substantive rights but, instead protects access to our state's courts" and no direct constitutional action for damages exists under this section). Accordingly, the motion to dismiss is granted with respect to the claims for money damages under Article I, section 10 of the Connecticut Constitution.

### 2.     Article I, Sections 7 and 9

In *Binette v. Sabo*, 244 Conn. 23, 25-26, 710 A.2d 688, 689 (1998), the Connecticut

Supreme Court relied on *Bivens v. Six Unknown Named Agens of Federal Bureau of Narcotics*, 403

U.S. 388 (1971), to recognize a private cause of action for monetary damages against municipal

police officers for violations of Article 1, sections 7 and 9 of the Connecticut Constitution based on

an alleged unreasonable search and seizure and unlawful arrest. Tyus has asserted no facts to

suggest that Chief Ackley was involved in or aware of searches conducted by officers or arrests of

the plaintiff made in January, February or March 2011. Thus, the plaintiff has failed to allege that

defendant Ackley violated his rights under the Connecticut Constitution. The motion to dismiss is

granted with respect to the claims under Article I, sections 7 and 9 of the Connecticut Constitution

against defendant Ackley.

The defendants argue that the *Binette* decision does not imply a damages cause of action

against a municipality. Thus, they move to dismiss the claims under Article I, sections 7 and 9 of

the Connecticut Constitution against the City of New London. Research has revealed no

Connecticut case law recognizing municipal liability for violations of Article I, sections seven or

nine of the Connecticut Constitution. *See Bazzano v. City of Hartford*, No. CV 980584611S, 1999

WL 1097174, at * (Conn. Super. Ct. Nov. 18, 1999) (granting motion to strike claim against

municipality for violations of Connecticut Constitution Article First, sections 7 and 9 because "the

deterrent effects of the *Bivens* remedy [against the officers] would be lost if the court was to imply a

damages cause of action directly against the municipality and a supervisor"). Accordingly, the

motion to dismiss is granted with respect to the claims under the Connecticut Constitution against

the City of New London.

Pursuant to *Binette*, the search and seizure claims under the Fourth Amendment will proceed

against defendants Wright, Bergeson, Christina, McBride, Lynch, Henderson, Marcaccio, Pelchat,

Melissa Schafranski, Omara and Lamontagne. The motion to dismiss is denied against those defendants with respect to the claims under the Connecticut Constitution's search and seizure provisions set forth in Article I, sections 7 and 9.

> **F.      Infliction of Emotional Distress and Negligence Claims**

In Counts VIII and IX, the plaintiff alleges that the defendants subjected him to assault and battery, mental and emotional distress and physical pain. In addition, the plaintiff claims that the defendants' conduct constituted gross negligence. The defendants argue that the claims for negligence and infliction of emotional distress should be dismissed.

A claim for intentional infliction of emotional distress requires a plaintiff to prove "that the [defendant] intended to inflict emotional distress or that he knew or should have known" that his conduct would cause emotional distress, "that the conduct was extreme and outrageous," that the plaintiff's distress was caused by the defendant's conduct and that the plaintiff suffered severe emotional distress. *Appleton v. Bd. of Ed.*, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000) (citation omitted). To state a claim of negligent infliction of emotional distress, a plaintiff must plead that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003).

Tyus's allegations that the defendants' conduct caused him mental and emotional suffering and distress are not supported by facts that suggest the distress he suffered was severe enough to maintain an intentional infliction of emotional distress claim. He has not alleged facts sufficient to infer that any emotional distress he suffered was "severe enough that it might result in illness or

bodily harm." *Id.* Thus, the plaintiff has not plausibly alleged a claim of intentional or negligent infliction of emotional distress.

Furthermore, under Conn. Gen. Stat. § 52-584, "[n]o action to recover damages for injury to the person . . . caused by negligence, or reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered." Thus, any claim for negligence or negligent infliction of emotional distress should have been brought prior to March 3, 2013. The plaintiff commenced this action in October 2013. The plaintiff's claims of negligence and negligent infliction of emotional distress are time-barred. The motion to dismiss is granted as to the claims of negligence and negligent and intentional infliction of emotional distress.

## IV.    Conclusion

The Motion to Dismiss [**Doc. No. 39**] is **GRANTED** with respect to all claims against defendants Zelinski and Liachenko, the claims under Article I, sections 7 and 9 against defendants Ackley and the City of New London, all claims against defendant Ackley in her individual and official capacities, the claim that defendants Officers Newton, Lynch, Pelchat and Marcaccio falsely arrested the plaintiff on March 3, 2011, and the state law claims of negligence and intentional and negligent infliction of emotional distress and under Article I, section 10 of the Connecticut Constitution against all defendants. The Motion to Dismiss [**Doc. No. 39**] is **DENIED** in all other respects.

With regard to the New London defendants, the case will proceed on the Fourth Amendment search and seizure and excessive force claims, the Fourteenth Amendment equal protection claim, and the state law claims of assault and battery against defendants Wright, Bergeson, Christina,

McBride, Lynch, Henderson, Marcaccio, Pelchat, Schafranski, Omara and Lamontagne in their individual and official capacities; the case will proceed on the Connecticut Constitutional Claims under Article I, sections 7 and 9 against defendants Wright, Bergeson, Christina, McBride, Lynch, Henderson, Marcaccio, Pelchat, Schafranski, Omara and Lamontagne in their individual capacities; and the case will proceed only on the Fourth and Fourteenth Amendment claims against the City of New London.

 SO ORDERED at Bridgeport, Connecticut this 31st day of March 2015.

       /s/ STEFAN R. UNDERHILL
       Stefan R. Underhill
       United States District Judge